# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

Amy J. Morgan,

      Plaintiff,

      v.                                                           3:11-CV-139 JVB

Michael Astrue,
Commissioner of Social Security
Administration,

      Defendant.

## OPINION AND ORDER

Plaintiff Amy J. Morgan seeks judicial review of the final decision of Defendant Michael

J. Astrue, Commissioner of Social Security, who denied her application for Supplemental

Security Income disability benefits under the Social Security Act. For the following reasons, the

Court affirms the Commissioner's decision.


**A.     Procedural Background**

On March 9, 2007, and May 25, 2007, Plaintiff applied for Supplemental Security Income

disability ("SSI") benefits alleging disability beginning March 9, 2007. Her claim was denied on

July 5, 2007, and upon reconsideration on September 5, 2007. On October 11, 2007, she filed a

request for a hearing before Administrative Law Judge Yvonne K. Stam ("ALJ").

On November 16, 2009, the ALJ determined that Plaintiff was not disabled and was thus

not entitled to SSI benefits. The ALJ found as follows:[1]

---

[1] The ALJ's findings are quoted directly from the record. (R. 13–24.)

1.   The claimant has not been engaged in substantial gainful activity since March 9, 2007, the application date.

2.   The claimant has the following severe impairments: depression, anxiety, and polysubstance abuse.

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.   After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorders, the claimant has the mental residual functional capacity to perform work with the following limitations: she is limited to simple routine tasks with a relatively unchanging work setting and process and without fast pace or high production demands. She cannot work with the general public, and is limited to only brief and superficial contact with coworkers and supervisors.

5.   The claimant is unable to perform any past relevant work.

6.   The claimant was born on June 16, 1967, and was 39 years old, which is defined as a younger individual age 18–49, on the date the application was filed.

7.   The claimant has at least a high school education and is able to communicate in English.

8.   The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above.

9.   Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use

disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

10. Since the claimant went through Drug Court and apparently stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant continues to have a severe impairment or combination of impairments.

11. Since the claimant apparently stopped the substance use, the claimant does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

12. Since the claimant went through drug court, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(c) except no climbing of ropes, ladders or scaffolding or working around unprotected heights. The claimant should avoid extreme cold environments, and have no interaction with the general public; all work should be simple and routine tasks in a relatively unchanging setting with repetitive processes; the claimant should have limited contact with co-workers and supervisors; and the claimant should not work in a fast-paced work setting or work with high production demand.

13. In the absence of substance use, the claimant would continue to be unable to perform past relevant work.

14. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

15.     In the absence of substance abuse, considering claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.

16.     Because the claimant would not be disabled in the absence of the substance use, the claimant's substance use disorders are a contributing factor material to the determination of disability for the period when she was abusing. Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the date of the application was filed through the date of this decision.

On March 1, 2011, the Appeals Council adopted the ALJ's findings, but found the Plaintiff was not disabled under Medical-Vocational Rule 202.21 rather than Medical-Vocational Rule 203.29. (R. 4.)


**B.     Factual Record**

**(1)     *Plaintiff's Background***

Plaintiff was born on June 16, 1967. (R. 18.) She did not complete high school, but received her GED. (R. 15.) She has worked sporadically as a cook (R. 193, 284), medical housekeeper (R. 36), and babysitter (R. 402).

She has three children, twin daughters, who are currently around thirteen years old (R. 34) and an older son (R. 49). Plaintiff lives with her children and cares for them. (R. 34, 48.) Plaintiff testified she takes care of her twins by getting them ready for school and cooking meals for them. (R. 42–4.) While the children are at school, Plaintiff cleans the house, washes dishes, and does laundry. (R. 42–4.) She also goes to the grocery store. (R. 217–9.)

Plaintiff has a history of mental health issues and substance abuse. Her mental health issues began after she was repeatedly molested by her brothers from age nine to fourteen. (R. 49.) She became pregnant, and was forced to give up the baby for adoption. (R. 49–50.) Later, she developed a dependence on alcohol, cannabis, and cocaine. In October 1991 or February 1992 she was arrested for driving under the influence of cannabis. (R. 386.) On January 11, 2007, Plaintiff was arrested for cocaine use and her children were removed from the home. (R. 361, 423.)

**(2)** *Medical Evidence*

On October 26, 1988, Plaintiff was evaluated at the Swanson Center, where they noted a previous evaluation at age twelve. (R. 395.) At age twelve she was diagnosed with other personality disorder. (R. 395.) At this evaluation Plaintiff was diagnosed with post-traumatic stress disorder and dysthymia (chronic low mood) after repeated episodes of abuse. (R. 394.)

On July 7, 1992, an addictions counselor at the Swanson Center observed Plaintiff had underlying mental health issues in addition to her substance abuse disorder. (R. 393.)

On September 26, 1996, she was discharged from the Swanson Center with a diagnosis of major depressive disorder recurrent mild psycho social/environmental problems; survivor of sexual, physical, emotional, and verbal abuse; adult child of an alcoholic; financial concerns; and conflict with an abusive boyfriend. (R. 383.) Her Global Assessment Functioning ("GAF") score was 41, with the highest score being 51 in past years. (R. 383.) The GAF score signifies how wells persons are dealing with problems in their lives. The Plaintiff's GAF score indicates serious symptoms and impairment in social, occupational, or school functioning. (Pl. Br. at 4.)

The addiction counselor believed Plaintiff had underlying mental health issues in addition to her substance abuse disorder (R. 393), but believed her prognosis to be fair. (R. 385)

On March 22, 1999, Plaintiff was admitted to the Swanson Center for the fourth time. (R. 292.) She was diagnosed with adjustment disorder (having a disproportionately intense reaction to a stressor) and the records indicate she had features of dependent personality disorder (becoming emotionally dependent on others). The record also indicates she had headaches, stomachaches, blood pressure issues, abnormal periods, and psycho social environmental problems, including the relationship problems with father of her twins, caring for the twins, balancing care for herself, the twins, her son and her partner. (R. 297.) Her GAF score was 50, with the highest score being 55 in the past year. (R. 297.) On March 15, 2000, she had another clinical assessment. Her GAF score was 56, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. (R. 279.) Plaintiff reported she had trouble with keeping appointments and work attendance. (R. 275.)

In December 2005 or January 2006, Plaintiff attended an Alcoholics Anonymous session. (R. 299.)

In January 2006, Wabash County Court committed Plaintiff for an emergency detention after she attempted to commit suicide by overdosing. (R. 399.) She was hospitalized for twenty-four hours (R. 319.) The application for emergency detention lists a psychiatric disorder (R. 398), but an evaluation by the Bowen Center on January 24, 2006, states she was "diagnosed with Major Depressive Disorder, as well as, Cocaine, Cannabis, and Alcohol Dependence." (R. 445.)

In September 2006, Christi Ballard evaluated Plaintiff, after the state removed her daughters from the home. (R. 301.) Plaintiff admitted to cocaine use. (R.301.) Ms. Ballard noted

Plaintiff's history of being non-compliant with mental health services and her history of substance abuse. (R. 301.) Plaintiff was diagnosed with major depressive disorder and cocaine dependence, in early remission. (R. 301.) Plaintiff was referred to individual counseling for her substance abuse. (R. 302.)

In October 2006, Plaintiff underwent treatment for substance abuse with Tim McVicker. Mr. McVicker questioned Plaintiff's self-reported history of alcohol, marijuana, and cocaine abuse, noting there were indicators she was intoxicated more often. (R. 350.) She claimed not to have used marijuana for six to seven years. (R. 350) However, in the past she reported she would smoke between one and three joints a day. (R. 350.) Finally, she reported she began using cocaine at age twenty-one, and that she last used cocaine two months earlier. (R. 350.) Mr. McVicker noted that some of the plaintiff's substance abuse appeared to be because of her psychological dependence on these drugs. (R. 350.) She was diagnosed with cocaine dependence, alcohol dependence, and cannabis dependence, in remission. (R. 351.)

In November 2006, Dr. Hani Ahmad, a psychiatrist, evaluated the Plaintiff to determine the possibility of using medication to manage her mental issues. (R. 305.) She reported her mood was better, and that she had no symptoms of depression, mania, hypomania, or suicidal ideation. (R. 307.) She was having difficulty sleeping, as well as obsessive compulsive behavior and anxiety when she tried to avoid obsessive thoughts. (R. 305.) Dr. Ahmad's assessment noted her mood as "okay," her thoughts were logical, linear, and goal-oriented, her affect was appropriate, judgment was intact, and her insight was fair. (R. 307.) Her difficulty in performing serial 7's suggested poor concentration and attention. (R. 308.) Dr. Ahmad diagnosed her with Obsessive Compulsive Disorder; Attention Deficit/Hyperactivity Disorder, Inattentive Type; a History of Major Depressive Disorder, Recurrent, with Moderate Intensity; Cocaine Dependence in Early

Full Remission; Cannabis Dependence in Early Full Remission; and Alcohol Dependence in Early Partial Remission. (R. 308.) She was prescribed Luvox for her obsessive compulsive disorder and Trazodone for depression. (R. 309.)

On January 11, 2007, Plaintiff was arrested after leaving her children alone over night to use cocaine. (R. 361, 423.)

On February 27, 2007, Plaintiff relapsed into an acute post-traumatic stress disorder episode, after receiving "notice of substantiation of neglect and emotional abuse allegations by DCS." (R. 417.) This relapse was marked by anxiety, delusions of persecution, and paranoia. (R. 417.) Her treatment team suggested she apply for SSI benefits (R. 417.)

In March 2007, Dr. James Haughn, a family practice physician, evaluated Plaintiff after she complained of fatigue, bone ache, hip and back pain, swelling in the thighs, and weight gain. (R. 311.) She also reported visual hallucinations, but refused a referral to the Bowen Center. (R. 311.) She was receiving services from White's Residential and Family Service during this time. (R. 415, 418, 421.)

On April 30, 2007, she began counseling at the Bowen Center. (R. 361.) Dr. Ahman noted her cocaine addiction was in early partial remission, and Plaintiff had a diagnosis of obsessive-compulsive disorder, attention deficit hyperactivity disorder, and a history of post traumatic stress disorder. (R. 361.)

In May 2007, Dr. Russell Coulter-Kern, a licensed psychologist, performed a consultative psychological evaluation. (R.315–8.) Plaintiff reported she was anxious, forgetful, and overwhelmed. (R.315.) She was able to go shopping, but felt irritable around people. (R. 316.) Plaintiff was working as a preparation cook, but stopped when the restaurant closed. (R. 316.) After an examination, Dr. Coulter-Kern evaluated Plaintiff's judgment and insight as good, her

fund of information as poor, her immediate memory as fair, her recent memory as good, her past memory as poor, her ability to understand and interpret information as fair, and her ability to manage her own affairs without assistance as good. (R. 317–8.) These evaluations were based on Dr. Coulter-Kern's observations that Plaintiff's hygiene was good, her eye contact appropriate, her speech quality normal, her thought processes logical and coherent, and her mood as "okay." (R. 318.) Plaintiff reported her daily activities as managing her personal hygiene, cooking, cleaning, managing her finances, listening to music, washing dishes, going to the library, and getting on the computer. (R. 316.) Plaintiff was diagnosed with anxiety disorder, not otherwise specified, and attention deficit hyperactivity disorder, combined type. (R. 318.) Dr. Coulter-Kern assigned a GAF score of 65-70, indicating he believed Plaintiff's symptoms to be mild or that she had some mild limitations in social, occupation, or school functioning. (R. 21.)

In May 2007, Dr. Shuyuan Wang performed a consultative physical examination. (R. 319–24.) Plaintiff reported she last used cocaine five months previously. (R. 320.) He diagnosed the Plaintiff with depression and anxiety, post-traumatic stress disorder, ODD, ADD, allergies, COPD, hypertension, left hip pain, low back pain, mild bilateral length discrepancy, and a history of substance abuse. (R. 323.)

In June 2007, Plaintiff was discharged from her chemical dependency group, with a note that Plaintiff admitted to using drugs during the treatment process, and a diagnosis of major depressive disorder, cocaine dependence, alcohol dependence, and cannabis dependence in remission. (R. 349.) She had some progress in recognizing the mood altering effects of her substance abuse. (R. 349.)

In July 2007, Plaintiff reported stress over the results of her case conference with child services to get her two daughters back. (R. 381.) Plaintiff said she agreed to complete the

Wabash County Drug Court Program so she could visit her daughters. (R. 381.) A week later, Plaintiff reported feeling better and the therapist noted she was only mildly distressed. (R. 380.)

In July 2007, Dr. F. Kladder, the state agency reviewing psychologist, gave the opinion that Plaintiff did not have a severe mental impairment. (R. 334.) He believed she only had mild restrictions on daily living, mild difficulties in social functioning, mild difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. (R. 344.) Dr. Joseph Pressner and Dr. B. Whitley agreed with Dr. Kladder's opinion that Plaintiff did not have a severe mental impairment. (R. 366–7.)

In September 2007, when Plaintiff began her court-ordered participation in the Drug Court program, she reported working 50 hours a week as a babysitter. (R. 402.) In October 2007, Plaintiff reported she was doing well (R. 377), and again reported she was still doing well in early and late January 2008. (R. 370, 369.)

In November 2008, Jeffrey Locke, a social worker who worked with the Plaintiff from September 2006 through April 2008, reported that Plaintiff exhibited symptoms of decreased energy, depressed mood, persistent agitation, strong feelings of self-reproach, difficulty concentrating, and appetite and sleep disturbances. (R. 436.) He noted she had a profound mistrust of others and experienced significant anxiety in social situations. (R. 436.) He believed her symptoms were consistent with diagnoses of major depression, post-traumatic stress disorder, and paranoid personality disorder and that her symptoms resulted in marked restriction in her daily living and ability to interact socially. (R. 437.) He believed her mental health symptoms to be debilitating and chronic to the extent she should apply for SSI benefits. (R. 437.)

In October 2010, Dawn Etzel, a therapist, updated Plaintiff's mental health assessment. (R. 486–90.) Plaintiff reported being abstinent from mood-altering drugs since approximately

2007. (R. 487.) Ms. Etzel reported Plaintiff was oriented to person, place, time, and situation, was very cooperative, presented with fair memory, and presented with normal perception and coherent thinking. (R. 386.) Plaintiff reported being highly isolated and feeling extreme anxiety when she needed to leave home. (R. 486.) Ms. Etzel diagnosed Plaintiff with post-traumatic stress disorder, chronic (R. 489) and that her prognosis was fair (R. 490).

In January 2011, Virginia Butler, a therapist, reported Plaintiff exhibited decreased energy, depressed mood, persistent agitation, difficulty concentrating, strong feelings of self-reproach, appetite disturbances, and sleep disturbances. (R. 484.) She also reported that Plaintiff was easily distracted, often forgetful, had marked difficulty concentrating, and experienced symptoms of acute anxiety. (R. 484.)


**(3)** *Plaintiff's Testimony*

At the hearing, Plaintiff testified she has tried to keep a job, but becomes overwhelmed by anxiety. (R. 33.) She testified she has been sober for over a year. (R. 33.) In 1994, she worked at the Blue Ribbon Café sporadically for two years. (R. 34.) In 1998 and 1999, she worked part-time at two different nursing homes, where she cleaned rooms, made beds, and passed out ice water. (R. 35–6.) At one of the nursing homes, she worked for one year, and at the other nursing home she only worked for three months. (R. 35–6.) She could not recall why she left the job at the nursing home, but said she could try working in a similar position again. (R. 37.) Her difficulty in keeping the job would be her anxiety and concentration. (R. 37, 47.) When she becomes anxious and overwhelmed, she leaves the situation. (R. 47.) Plaintiff testified this happens often. (R. 47.) There are also times when she is too anxious to answer the door or leave the house. (R. 51.) And she has difficulty following directions. (R. 50.)

Plaintiff no longer attends twelve-step meetings, but sees a counselor from the Bowen Center twice a month. (R. 37–8.) She testified that she takes Zoloft and Wellbutrin. (R. 39.) She stopped taking her medication for two or three weeks, but started taking them again after she began feeling more anxious. (R. 40.)

On a typical day, Plaintiff gets her daughters ready for and drives them to school. (R.42.) Then she returns home, goes on her computer, cleans dishes, and visits her sister's house. (R.43.) She typically visits her sister's house two or three times a week; she stays for about an hour and talks. (R. 43.) Later, she picks her daughters up from school, makes dinner, and cleans the house. (R.44.) She testified she does her own grocery shopping. (R. 44.) Outside of her mental health issues, she believes the arthritis in her back also interferes with her ability to hold a full-time job. (R. 45.)

Plaintiff's sister also testified. She said Plaintiff has trouble concentrating (R. 55), following directions (R. 56), and remembering things. (R. 54.) She does not interact with others outside of her family and does not respond well to supervision. (R. 58.)

**(4)** ***Vocational Expert's Testimony***

Vocational Expert ("VE"), Robert S. Barkhaus, Ph.D., testified at Plaintiff's hearing on September 11, 2009. (R. 31, 59.) The ALJ presented him with a hypothetical profile of person limited to light work, no interaction with the general public, performing simple routine tasks in a setting and work process that is relatively unchanging with limited contact with supervisors and coworkers, with that contact being brief and superficial, and no fast pace or high production quotas. (R. 60.) The VE believed a small products assembler job would fit this profile, with 1,000 of such jobs present in northeast Indiana. (R. 60.) A cleaner or maid job would also fit the

profile with 600 jobs present. (R. 60.) Additionally, a laundry folder job would fit, with 200 estimated jobs present. (R. 60.)

Most employers would allow additional two or three breaks a week for these jobs, but consistent absences would not be tolerated. (R. 60–1.) These jobs do not require close supervision. (R. 61–2.) The location of work might change, but not the tasks. (R. 62.) The jobs may require the employee to take some instruction and sometimes work with a coworker. (R. 63.) The employee would also need to respond appropriately to some supervision. (R. 64.)

**(5)** *The Administrative Law Judge's Decision*

The ALJ concluded that Plaintiff was under disability, but that substance abuse disorders were a contributing factor material to the determination of disability. (R. 13.) Therefore, Plaintiff was not disabled under the Social Security Act. (R. 13.) The ALJ found Plaintiff's depression, anxiety, and polysubstance abuse to be severe impairments, but these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15–6.)

The ALJ found the Plaintiff did not meet "paragraph B" criteria because Plaintiff only has mild restrictions in daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. (R. 16.) Furthermore, the ALJ found the Plaintiff had not experienced episodes of decompensation for extended duration. (R. 16.) To satisfy "paragraph B" criteria, Plaintiff's mental impairments, including substance abuse disorders, must present two marked difficulties in these areas or repeated episodes of decompensation. 20 C.F.R. Part 404, Subpart P, App. 1, §§ 12.02, 12.02. Even without the substance abuse, the ALJ found Plaintiff does not meet "paragraph B" criteria and only has: mild

restrictions in daily living activities, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (R. 19.) The claimant experienced no periods of decompensation in the absence of substance abuse. (R. 19.)

The ALJ also found the Plaintiff did not meet "paragraph C" criteria because she did not provide a medically documented history of a chronic affective disorder of at least two years' duration that causes a more than minimal limitation in ability to do basic work. (R. 16–7.) In the absence of substance abuse, the ALJ still found Plaintiff did not meet "paragraph C" criteria because she did not provide a medically documented history of a chronic affective disorder of at least two years' duration that causes a more than minimal limitation in ability to do basic work. (R. 19–20.)

The ALJ found Plaintiff to be credible regarding her depression and anxiety, and how they affect social interactions and her ability to maintain concentration, persistence, and pace during the period that the claimant was abusing illegal drugs. (R. 17.) The ALJ noted the correlation between periods of illicit drug usage and decompensation (R. 17), further noting that, after Plaintiff stopped the substance abuse, she has not had an episode of decompensation. (R. 19.)

The ALJ found medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence, and limiting effects were not credible because they were inconsistent with the objective evidence in the record. (R. 22.) The ALJ noted Plaintiff's part-time work in February 2007 and her failure to seek examination and treatment after a complaint about visual hallucinations. (R. 21.) The ALJ placed great weight on Dr. Coulter-Kern's independent psychological exam on May 2, 2007. (R. 21.) Dr. Coulter-Kern assessed Plaintiff's GAF score at

65-70, reflecting mild symptoms. (R. 21.) The ALJ also placed great weight on Dr. Wang's independent internal medicine consultative exam on May 23, 2007. (R. 21.) Dr. Wang said Plaintiff could work an eight-hour day in a seated or standing position with walking no more than thirty minutes of every hour. (R. 21.) Dr. Wang also believed she was capable of carrying fifteen pounds frequently, thirty pounds occasionally, but said no to rope climbing, ladders or scaffolding or working around unprotected heights. (R. 21.) He also believed Plaintiff should avoid extreme cold environments. (R. 21.) The ALJ placed limited weight on Jeffrey Locke's opinion, her social worker, that her mental health issues are chronic and debilitating because these conclusions are not supported by the objective evidence in the record. (R. 22.)

C.    Standard of Review

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**D.     Disability Standard**

To qualify for Disability Insurance Benefits the claimants must establish that they suffer from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 CFR. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.
>
> *Scheck v. Barnhart,* 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

**E.     Analysis**

**(1)     *The ALJ relied on substantial evidence in concluding that in the absence of substance abuse, the Plaintiff's remaining limitations have minimal impact on daily living.***

Plaintiff claims the ALJ erred because Plaintiff continued to experience severe mental health issues in the absence of substance abuse. (Pl. Br. 18–22.)

Under the Social Security Act, an otherwise disabled person will not receive benefits if substance abuse is a "contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C) (2012). The ALJ must determine if the person would still be found disabled without the substance abuse. *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006); *see also* 20 C.F.R. § 404.1535(b)(1) (1995). The ALJ follows the normal five-step analysis to determine if the claimant is disabled. If the claimant is disabled under this initial analysis, the ALJ determines the physical and mental limitations that would remain in the absence of substance abuse. 20 C.F.R. § 404.1535(b)(2). Finally, the ALJ determines whether the remaining limitations meet the definition of disabled under the Social Security Act. If the limitations meet the definition of disabled, the claimant is "disabled independent of [her] drug addiction or alcoholism." 20 C.F.R. § 404.1535(b)(2)(ii). If the claimant's remaining limitations are not disabling, the substance abuse is material to the determination of disability. 20 C.F.R. § 404.1535(b)(2)(i).

(a)     *Correlation between Plaintiff's drug use and decompensation*

The ALJ noted the correlation between Plaintiff's drug use and decompensation, which is supported by substantial evidence in the record. (R. 17.) The ALJ relies on the evaluation of Dr. Hani Ahmad who noted that Plaintiff had serious symptoms related to her Obsessive Compulsive disorder, Attention Deficit/Hyperactivity Disorder, and Major Depressive Disorder. (R. 17, 355.) There are reports of Plaintiff's drug use surrounding the time she went for this evaluation, notably an arrest for cocaine a few months after her visit to Dr. Ahmad. (R. 361, 423, 350, 422.) Plaintiff continued to use drugs while she attended a court-ordered Drug Court program. (R. 349.) Finally, the ALJ did not mischaracterize the Wabash Circuit Court's January 2006

hospitalization order. (R. 398.) The order listed a psychiatric disorder, but an evaluation the next day also noted her continued substance abuse. (R. 445.) Thus, the ALJ properly notes Plaintiff's periods of decompensation corresponded to her periods of drug abuse.

(b)     *Limited weight of Jeffrey Locke's report*

The ALJ's attribution of limited weight to Jeffrey Locke's report is supported by substantial evidence. (R. 22.) Jeffrey Locke was a social worker. (R. 436.) Thus, while he may have spent significant time with the Plaintiff, he is not an acceptable medical source according to the regulations. (R. 436.) As such, his opinion does not have controlling weight. *See* 20 C.F.R. § 404.1513(a). Further, as noted by the ALJ, Jeffrey Locke's opinion was not supported by the objective evidence of the record. *Cf. Zblewski v. Astrue*, 302 Fed. Appx. 488, 493–4 (7th Cir. 2008) (stating the ALJ could properly give limited weight to an opinion that was not an acceptable medical source according to regulations and not supported by the objective evidence in the record).

(c)     *Plaintiff's credibility*

The ALJ relied on substantial evidence in finding that Plaintiff's claims as to the "intensity, persistence, and limiting effects of these symptoms are not credible." (R. 21.) An ALJ's credibility determination will only be overturned if "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). No such finding can be made here.

The ALJ found the claims were not supported by the objective evidence in the record. (R. 21.) During her alleged period of disability, Plaintiff was able to work fifty hours a week babysitting when she was abstinent from substance abuse. (R. 402.) Plaintiff's ability to work

during her alleged period of disability reflects poorly on her credibility concerning severity of her symptoms. *Cf. Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006) (noting claimant's ability to continue working four years after diagnosis with the same symptoms indicated the claimant's testimony concerning her inability to work because of pain were exaggerated). She reported doing well during therapy sessions, again when she was not using illicit substances. (R. 369, 370, 375, 402.)

Plaintiff argues she still has severe mental health issues in the absence of substance abuse, and points to the record. (Pl. Br. 25–8.) However, there is evidence of substance abuse during these periods and the ALJ relied on substantial evidence in finding that Plaintiff was not credible in reporting her substance abuse history. (R. 349, 350.)

Plaintiff also argues the ALJ improperly relied on Plaintiff's refusal for a referral to a mental health center in March 2007. (Pl. Br. 23.) Rather, the ALJ found that Plaintiff's refusal and the rest of the objective medical evidence in the record "reflect[ed] poorly on [her] credibility" about the severity of her reported symptoms. (R. 21.) Plaintiff was receiving mental health services during this period (R. 415, 418, 421) and accepted the referral a month later (R. 361), but this does not undermine the ALJ's credibility determination because the ALJ relied on other evidence as well. (R. 21.) *Cf. Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) (noting the ALJ's credibility determination was not mistaken because, even if the ALJ incorrectly noted a gap in treatment, the ALJ relied on additional objective medical evidence in making the credibility determination).

(d)     *Testimony of Plaintiff's sister*

Plaintiff argues the ALJ disregarded the testimony of her sister. (Pl. Br.at 22.) The ALJ considered all evidence before her. The sister's testimony did not present a line of evidence different from Plaintiff's testimony, and therefore, the ALJ is not required to discuss it. *See Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996) (stating the ALJ did not err in declining to address the testimony of claimant's brother because it reiterated claimant's testimony). Additionally, as with Plaintiff's testimony, the sister's testimony about the severity of Plaintiff's symptoms is not supported by the objective evidence in the record.

**(2)**     ***The ALJ adequately addressed SSR-85-15.***

The Plaintiff claims the ALJ, and the Appeals Council in adopting the ALJ's findings, did not adequately address SSR-85-15. (Pl. Br. 27.)  Plaintiff claims she cannot "understand, carry out and remember simple instructions; [ ] respond appropriately to supervision, coworkers or usual work situations; and [ ] deal with changes in a routine work setting." (Pl. Br. 27.) With these limitations, Plaintiff claims there are no jobs available for her. (Pl. Br. 28.) The ALJ properly relied on the evidence provided by the VE. In posing a hypothetical to the VE, the ALJ includes only the limitations she found to be credible. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) (stating the ALJ is only required to incorporate impairments and limitations he finds credible in posing a hypothetical to the VE).

The ALJ posed the following hypothetical to the VE:

> If I were to find an individual limited to light work, no general public, simple routine tasks in a setting and work process that is relatively unchanging, limited contact with coworkers, supervisors, brief and superficial, no fast pace or high production quotas, is there such work an individual can do?

(R. 60.)

The VE found there were jobs available in the national economy for this individual and that employers of these positions would allow additional breaks, but not repeated absenteeism. (R. 60–1.)

The ALJ's hypothetical was supported by the objective medical evidence in the record. As noted by the ALJ, in the absence of substance abuse, Plaintiff held a part-time job at Ford Meter Box (R. 21) and later worked fifty hours a week babysitting. (R. 402.) The evaluation by Dr. Coulter-Kern noted that Plaintiff's symptoms related to her anxiety disorder and her attention deficit hyperactivity disorder were mild. (R.315–8.) The record does not support plaintiff's claim that she is unable to handle any supervision (Pl. Br. 28), and the ALJ's hypothetical made allowances for Plaintiff's need for minimal supervision (R. 60). The VE testified that, even with the limitation of minimal supervision, there are available jobs for Plaintiff. (R. 62.) The VE also noted the suggested jobs typically require very little change in routine. (R. 64.)

**(3)** ***The additional evidence from Plaintiff's therapists Virginia Butler and Dawn Etzel.***

Plaintiff contends that the Appeals Council ignored additional evidence submitted after the ALJ's decision, including the October 2010 assessment of therapist Dawn Etzel and the January 2011 report of therapist Virginia Butler. There is no indication that the Appeals Council failed to consider their when determining that she was not disabled in its decision (R. 3-6). Indeed, contrary to Plaintiff's argument that the Appeals Council did not consider such additional evidence, the Appeals Council explicitly stated that "[c]omments and additional evidence have been received and considered" (R. 3). Furthermore, the Appeals Council explicitly indicated that the additional evidence containing the reports of Ms. Etzel and Ms. Butler had been entered into the record (R. 3, 7).

Moreover, although Plaintiff contends that the reports of Ms. Etzel and Ms. Butter demonstrated that she continued to experience serious symptoms in the absence of her substance abuse, Plaintiff has failed to show that such additional evidence warranted any further functional limitations than those contained within the ALJ's residual functional capacity finding. Although Plaintiff points out that Ms. Etzel and Ms. Butler indicated that Plaintiff had significant social limitations (R. 484, 486, 490), Plaintiff fails to acknowledge that the Appeals Council and ALJ reasonably found that Plaintiff had significant social limitations and, therefore, limited her to work that did not involve any interaction with the general public or more than limited contact with co-workers and supervisors (R. 5, 20). Neither Ms. Etzel nor Ms. Butler opined that Plaintiff had more restrictive social functional limitations than those assessed by the ALJ in his residual functional capacity finding. Likewise, although Plaintiff notes that Ms. Butler stated that Plaintiff had significant difficulties with concentration and remembering, Plaintiff fails to acknowledge that the Appeals Council and the ALJ reasonably accommodated Plaintiff's limitations in concentration and memory by limiting her to simple, routine tasks in a relatively unchanging setting with repetitive processes and no work in a fast-paced setting or work with high production demand (Tr. 5, 20). Again, neither Ms. Etzel nor Ms. Butler opined that Plaintiff's limitations in concentration and memory would cause more extensive functional limitations than those assessed by the ALJ in his residual functional capacity finding. To the extent that the reports of Ms. Etzel or Ms. Butler could potentially be interpreted to suggest greater limitations than those assessed by the ALJ and the Appeals Council, the ALJ reasonably found that further limitations were not warranted because they were not well-supported by the objective medical evidence of record or other substantial evidence (R. 20-22).

Because the reports of Ms. Etzel and Ms. Butler did not demonstrate that Plaintiff was more functionally limited than as assessed in the ALJ's residual functional capacity finding, the Court rejects Plaintiff's argument that the Appeals Council ignored such evidence merely because it did not explicitly evaluate such additional evidence in its written decision. *See Smith v. Apfel*, 231 F.3d 433, 444 (7th Cir. 2000) ("[W]e have repeatedly noted that the ALJ is not required to evaluate in writing every piece of evidence submitted. All we require is that the ALJ sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.") (quotations and citations omitted).

**F.      Conclusion**

The ALJ relied on substantial evidence in concluding that Plaintiff is not disabled under Social Security Administration standards. Substantial evidence supports the ALJ's finding that Plaintiff's substance abuse disorders were a contributing factor material to the determination of disability. Therefore, the Court affirms the ALJ's decision.


SO ORDERED on September 27, 2012.


  S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE